THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:  1:08CR48 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DEMETRION GROSS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court on a Motion to Suppress filed by Defendant, Demetrion Gross.  Plaintiff United States of America timely responded to the Motion. Upon review of the relevant filings, the evidence introduced at the hearing on this matter, and applicable law, Defendant's Motion to Suppress is DENIED.

**I.     Facts**

On November 15, 2007, Defendant was a passenger in an automobile registered to an individual named Ricardo Thomas.  Officer Eric Williams of the Cuyahoga Metropolitan Housing Authority approached the vehicle because it was running without a driver in the vehicle.  Upon approaching the vehicle and while questioning Defendant, Williams observed a bottle of alcohol in the vehicle.  Based upon his observation, Williams requested Defendant's identification to issue a citation for consuming alcohol in a vehicle.  Williams then ran a check on Defendant and found that an outstanding warrant existed for carrying a concealed weapon.  Williams then returned to the vehicle, removed Defendant, and placed him under arrest.  Defendant was patted down and placed in the rear of Williams' police cruiser.

With respect to this initial encounter, Defendant presented evidence of a different scenario. Specifically, Defendant presented the testimony of his girlfriend, Alicia Gunnels. Gunnels testified as follows. Williams and a second officer approached the vehicle immediately after she parked. While the second officer questioned Gunnels, Williams questioned Defendant. Gunnels also testified that it would have been impossible for Williams to see the bottle of alcohol while Defendant was seated in the vehicle. When further questioned, Gunnels testified that she did not even know the alcohol was in the vehicle until Williams removed it.

This Court credits Williams' testimony on these facts. Gunnels' testimony is found to lack credibility. While Gunnels asserts that two officers were present, Williams unequivocally testified that he was one a one-man patrol on the night in question and there is no evidence to suggest that another officer was on the scene. Gunnels also attempted to undermine Williams' assertion that he viewed alcohol in the vehicle. While stating that the alcohol could not have been seen from outside the vehicle, Gunnels also testified that she was entirely unaware of the presence of alcohol in the car. If Gunnels were truly unaware of the presence of alcohol in the car, she could not testify about its location and visibility. As Gunnels' statements are both internally inconsistent and in conflict with Williams' testimony, the Court has not credited her testimony.

Following his arrest, Officers transported Defendant to the Cuyahoga County Corrections Center. Upon entering the jail, Defendant was forced to walk through a metal detector. The metal detector repeatedly indicated the presence of metal on Defendant's person, but officers were unable to locate a metal object. Defendant was then escorted to Bullpen #4 in the jail.

A short time later, officers were alerted that a firearm was near the toilet in Bullpen #4. Williams verified the existence of the firearm and began investigating its origin. Through the investigation, officers learned that six inmates had been placed in Bullpen #4 on the day in question. Through a warrant, officers took a buccal swap from Defendant for DNA analysis. The DNA analysis revealed the presence of Defendant's genetic material on the firearm and its ammunition.

Defendant also made several phone calls while at the jail. Each of these conversations was taped. During the conversations, Defendant admitted to bringing the gun into Bullpen #4. Later, after requesting counsel, Defendant contacted ATF Agent Kimani Howell and requested a meeting. During that meeting, Defendant eventually confessed to bringing the firearm into Bullpen #4.

In his motion to suppress, Defendant alleges that any evidence against him must be suppressed as the fruit of an illegal search and seizure by Williams. Defendant also seeks to suppress the results of the DNA analysis, the content of his jailhouse telephone conversations, and any statements made to Agent Howell. The Court finds no merit in Defendant's contentions.

**II.     Law and Analysis**

Defendant raises four distinct challenges in his motion. This Court addresses each contention in turn.

A. <u>Initial Search</u>

Defendant has first asserted that his initial encounter with Williams was unlawful, thereby requiring that all evidence against him be suppressed. During the hearing on this matter, the Government did not argue that Williams initial questioning was permissible

3

under the Fourth Amendment. However, the Court notes that the facts strongly suggest that Williams had reasonable suspicion to approach Defendant. Williams was on patrol in what he described as a "high crime" area. While driving through a public parking lot in the early morning hours, he witnessed a running vehicle with no driver. At a minimum, Williams' community caretaking function required him to investigate these facts further. To do so, Williams approached the vehicle and spoke with Defendant through the window of the car. Defendant then voluntarily cracked the door of the vehicle and Williams observed the alcoholic container. Given the facts and Williams' minimal intrusion, the Court cannot find that the initial encounter was unlawful.

Assuming for the sake of argument that Williams' initial encounter was an unlawful seizure, Defendant's request for exclusion still must fail. "Where the police effectuate an arrest in an illegal manner but nonetheless have probable cause to make the arrest, the proper Fourth Amendment remedy is to exclude only that evidence which is a fruit of the illegality." *United States v. Hudson*, 405 F.3d 425, 439 (6th Cir. 2005). The *Hudson* Court emphasized that "although the manner of the defendant's arrest was unconstitutional, his continued custody-supported by probable cause-was not unlawful[.]" *Id.* (citing *New York v. Harris*, 495 U.S. 14, 18 (1990)). The defendant in *Harris* voluntarily made a statement in the police station after unlawfully being arrested in his home without a warrant. The Court held that this statement was admissible because it "was not the fruit of the fact that the arrest was made in the house rather than someplace else." *Harris,* 495 U.S. at 20.

This Court reaches a similar conclusion. The uncontroverted evidence introduced at the hearing in this matter indicates that an outstanding arrest warrant led to

4

Defendant's arrest, rendering his continued custody lawful.  Further, Defendant has not sought to suppress any evidence gathered during Williams' initial stop.  Rather, the evidence Defendant seeks to suppress evidence that came into existence following his lawful arrest on an outstanding warrant.  The Court, therefore, finds that there are no fruits of the alleged initial unlawful seizure.  Rather, the evidence Defendant seeks to suppress was gathered after his lawful arrest on an outstanding warrant.  Defendant's motion on this point lacks merit.

    B. DNA swab

Defendant next asserts that the affidavit used to secure a warrant for a buccal swab to obtain his DNA was defective.  During argument, the Government conceded that the affidavit failed to establish probable cause.  The Government, however, contends that the results of the DNA analysis are admissible because they would have been inevitably discovered through independent means.  This Court agrees.

The inevitable discovery doctrine provides that where "the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." *Murray v. United States*, 487 U.S. 533, 539 (1988).  The Sixth Circuit has applied this rule in two settings: (1) when an "independent, untainted investigation … inevitably would have uncovered the same evidence"; or (2) when there exist "other compelling facts establishing that the disputed evidence inevitably would have been discovered." *United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir.1995).

In the instant matter, the Government presented evidence that an independent, untainted investigation would have revealed that Defendant's DNA matched the DNA

5

found on the firearm. Detective David Lisy was the affiant for the warrant securing Defendant's DNA. Lisy testified as follows. If the warrant had been denied, he would have entered Defendant's DNA into the Combined DNA Index System ("CODIS"). In support of this argument, the Government introduced evidence that Defendant's DNA had been collected by the State of Ohio in October of 2003 and placed on file on October 10, 2003.

Based upon this evidence, the Court finds that the Government would have inevitably discovered its DNA evidence through an independent investigation, untainted by the defective warrant affidavit. As the use of Defendant's on-file DNA would not invoked any Fourth Amendment issue, the Government was free to compare the DNA from the firearm to Defendant's DNA in possession of the State of Ohio. As DNA does not change over time, the Government inevitably would have matched Defendant's DNA to the DNA on the firearm, even without a warrant for the buccal swab. Defendant's request to suppress the DNA evidence, therefore, is denied.

   C. <u>Jailhouse recordings</u>

Defendant next requests that the content of recordings of his jailhouse telephone calls be suppressed. The Court finds no merit in Defendant's contentions.

The Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq. ("Federal Wiretapping Act") limits the government's ability to intercept and record private conversations. Title III of the Federal Wiretapping Act prohibits the unauthorized interception of "any wire, oral, or electronic communication" in the absence of judicial authorization, 18 U.S.C. § 2511(1), and excludes any evidence from judicial proceedings if the Act is violated. 18 U.S.C. § 2515. While the Act's protections have been extended

to conversations by inmates on prison telephones, *United States v. Paul*, 614 F.2d 115, 116 n.2 (6th Cir. 1980), 18 U.S.C. § 2511(2)(c) exempts from the Act any recording performed when "one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c).

"In the prison context, when the facility has notified an inmate that his telephone calls may be recorded and monitored, the inmate's subsequent use of the telephone implies the requisite statutory consent to the recording and monitoring." *United States v. Sutton*, 2004 U.S. Dist. LEXIS 27743 (W.D.Ky. Nov. 17, 2004)(quoting *United States v. Rivera*, 292 F. Supp.2d 838, 844 (E.D. Va. 2003)). In the instant matter, the Government played portions of the taped recordings during the suppression hearing. Each phone call began with the following: "This call may be recorded or monitored." Detective Lisy testified that this notification was played on every outgoing phone call. As Defendant was placed on notice of the recording, he gave his implied consent to such a recording by subsequent using the telephone. Defendant's challenge to this evidence lacks merit.

D. Confession to Agent Howell

Defendant next challenges the admissibility of his confession to ATF Agent Kimani Howell. Defendant asserts that he invoked his right to counsel prior to Agent Howell eliciting his confession, rendering his confession invalid. This Court disagrees.

The uncontroverted evidence introduced at the hearing in this matter supports Defendant's contention that he invoked his right to counsel prior to confessing to Agent Howell. The remaining evidence, however, does not support a finding that Defendant's Sixth Amendment rights were violated.

Once a defendant has invoked his right to counsel, all interrogations must cease "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 485 (1981). Defendant presented evidence that he had first invoked his right to counsel when being questioned by Detective Lisy on December 5, 2007. In addition, Agent Howell testified that he attempted to question Defendant for the first time on January 16, 2008. At that time, Defendant again requested to speak with an attorney, so Agent Howell asked no questions. Despite these prior requests for counsel, Defendant called Agent Howell on the evening of January 16, 2008. In that conversation, Defendant requested that Agent Howell return on the following day because he wished to discuss the underlying matter. Agent Howell was unable to return the following day, but he did receive a second phone call from Defendant. During that conversation, Defendant again requested that Agent Howell return to the jail so that the two could speak. Based upon this undisputed evidence, the Government demonstrated that Defendant initiated the further communications with law enforcement. Agent Howell's actions, therefore, did not offend the Sixth Amendment.

Since there was no violation of the *Edwards* rule in this case, the next inquiry was "whether a valid waiver of the right to counsel … had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." *Edwards*, 451 U.S., at 486, n.9. Herein, Defendant appears to assert that his confession was coerced due to the prior questioning by officers after the invocation of his right to counsel. The Court finds no merit in this argument.

8

The record reflects that officers twice requested to speak with Defendant after he invoked counsel. Agent Howell ended his inquiry immediately upon Defendant requesting counsel. Detective Lisy testified that he immediately ended his interview as well when Defendant requested counsel. Finally, the Court had the opportunity to listen to the entirety of Defendant's confession. During the initial stages of the interview, Defendant continues to deny his involvement in placing the firearm in Bullpen #4. However, as he is presented with the evidence against him, Defendant requests that the tape be stopped and that he be permitted to begin anew. On the tape, Defendant requests a new interview because he is fearful that his initial dishonest answers will later be used against him. Defendant then details for Agent Howell how he was able to get the firearm into Bullpen #4 and how he disposed of the weapon near the toilet.

There is nothing on the tape, nor any evidence presented to this Court, to suggest that Defendant's waiver of his right to counsel was anything other than knowing and voluntary. The tape does not support a finding that Defendant was coerced in any manner. To the extent that Defendant has alleged that he was induced to make his confession because of promises from Agent Howell or other officers, the evidence does not support such a conclusion. If Defendant had been promised that he would not face jail if he confessed, the Court finds that such a promise would have been mentioned during Defendant's taped confession; it was not. Additionally, it defies logic to suggest that Defendant was promised by officers that he would not be charged and in response to such a promise, Defendant lied about his involvement to Agent Howell. Such a promise would presumable cause Defendant to be forthright; he was not. Defendant's suggestions of coercion are simply unsupported by the evidence.

Finally, the tape indicates that once Defendant indicated that he could not read, his rights were read to him by Agent Howell.  Following the reading of each right, Defendant indicated that he understood that right and waived it.  There exists no reason, therefore, to suppress Defendant's statements to Agent Howell.

**III.    Conclusion**

For the reasons set forth herein, Defendant's Motion to Suppress is DENIED.

So ordered.

April 21, 2008                                     ____/s/ Judge John R. Adams_____
                                                                                                  JUDGE JOHN R. ADAMS
                                                                                                  UNITED STATES DISTRICT COURT